CONOCOPHILLIPS COMPANY, Rodolfo C. Ramirez, Individually and as Independent Administrator of the Estate of Ileana Ramirez, and El Milagro Minerals, Ltd., Appellants

v.

Leon Oscar RAMIREZ, Jr., Individually, and Jesus M. Dominguez, as Guardian of the Estate of Minerva Clementina Ramirez, an Incapacitated Person, Appellees

No. 04-15-00487-CV

Court of Appeals of Texas, San Antonio.

Delivered and Filed: June 7, 2017

APPELLANT ATTORNEY: Cynthia Keely Timms, Locke Lord LLP, 2200 Ross Ave., Ste. 2200, Dallas, TX 75201-6776, Amanda Cottrell, Locke Lord LLP, 2200 Ross Ave., Ste. 2200, Dallas, TX 75201-2748, Michael V. Powell, Locke Lord LLP, 2200 Ross Avenue, Suite 2200, Dallas, TX

75201-6776, Adolfo Campero, Jr., Campero & Associates, P.C., 315 Calle Del Norte, Suite 207, Laredo, TX 78041, Darrell L. Barger, Hartline, Dacus, Barger, Dreyer LLP, 800 N. Shoreline Boulevard, Ste. 2000, Corpus Christi, TX 78401-3700.

APPELLEE ATTORNEY: Jesse R. Castillo, Castillo Snyder, P.C., 700 N. St. Mary's, Suite 405, San Antonio, TX 78205, Melanie Castillo, Castillo Snyder, P.C., 300 Convent St., Ste. 1020, San Antonio, TX 78205-3789, Kurt Kuhn, Kuhn Hobbs PLLC, 3307 Northland Drive, Suite 310, Austin, TX 78731, Lisa Hobbs, Kuhn Hobbs PLLC, 3307 North Land Drive, Suite 310, Austin, TX 78731, Alberto Alarcon, Hall, Quintanilla & Alarcon, P.O. Box 207, 1302 Washington St., Laredo, TX 78042, John A. Kazen, Kazen, Meurer & Perez, L.L.P., 211 Calle Del Norte, Laredo, TX 78042, J. Francisco Tamez, Kazen, Meurer & Perez, L.L.P., 211 Calle Del Norte, Suite 100, Laredo, TX 78041.

Sitting: Karen Angelini, Justice, Marialyn Barnard, Justice, Rebeca C. Martinez, Justice

## OPINION

Opinion by: Rebeca C. Martinez, Justice

ConocoPhillips Company and Rodolfo C. Ramirez, Individually and as Independent Administrator of the Estate of Ileana Ramirez, and El Milagro Minerals, Ltd. appeal the trial court's judgment declaring that appellees Leon Oscar Ramirez, Jr., individually, and Jesus M. Dominguez, as Guardian of the Estate of Minerva Clementina Ramirez, an Incapacitated Person, each own a 1/12 mineral interest in the Las Piedras Ranch, and that ConocoPhillips's three leases are not binding on their mineral interests because, as contingent remaindermen, they were required to sign the leases and did not. ConocoPhillips also challenges the amount of cotenancy accounting awarded and the award of attorneys' fees. Based on our analysis set forth below, we affirm the trial court's judgment in its entirety,[1] except for a reformation to correct a clerical error.

### BACKGROUND AND PROCEDURAL HISTORY

This appeal arises out of a dispute over the ownership of a ¼ interest in the mineral estate underlying a 1,058-acre tract of land known as "Las Piedras Ranch" in Zapata County, Texas. ConocoPhillips owns several leases on the land which have produced oil and gas since 1995. ConocoPhillips has been paying royalties on the production to the members of the Ramirez family who signed the leases in 1993 and 1997. Appellees Leon Oscar Ramirez, Jr. and his sister Minerva Clementina Ramirez, whose estate is represented by a guardian due to her incapacity, (collectively, "the Grandchildren") are not signatories on the leases and sued ConocoPhillips, as well as their uncle Rodolfo Ramirez and his company El Milagro Minerals, Ltd., to recover damages for their share of production from Las Piedras Ranch.

The early part of the chain of title to the mineral estate in Las Piedras Ranch is undisputed. Leon Juan Ramirez and his sister Felicidad each inherited a ½ undivided interest (surface and minerals) in seven tracts of land totaling 7,016 acres located in Zapata County, Texas. In 1941, they partitioned the surface estate so each fully owned 3,508 surface acres, but they expressly reserved their ½ undivided interests in the mineral estate underlying the whole 7,016 acres. In the surface partition, Leon Juan received the land that includes the 1,058-acre Las Piedras Ranch. Leon Juan died in 1966 and his will de-

---

1. The appellees' "Motion to Take Judicial Notice" filed on October 25, 2016 is denied.

vised half of his real property interests to his wife Leonor and half to their three children, Rodolfo, Ileana, and Leon Oscar, Sr. Therefore, Leonor inherited a ½ interest in the 3,508-acre surface estate, which includes Las Piedras Ranch, and a ¼ undivided mineral interest (half of Leon Juan's undivided ½ mineral interest) in the entire 7,016 acres, which includes Las Piedras Ranch. The three children as a group inherited the same, with each owning a 1/6 interest in the 3,508-acre surface estate and a 1/12 undivided mineral interest in the whole. The three children, Rodolfo, Ileana, and Leon Oscar, Sr., are referred to by the parties as "the Older Generation."

Ownership of the surface estate of Las Piedras Ranch is not at issue in this case. It is important to note, however, that, during the 1970s, Leonor and her three children, i.e., the Older Generation, engaged in a series of partitions and exchanges of the surface estate they co-owned, with each partition and exchange agreement containing an express reservation of their undivided mineral interests in the whole 7,016 acres. In the 1975 Partition Agreement, Leonor and the Older Generation partitioned the 3,508-acre surface estate they inherited from Leon Juan into separate tracts of farm and ranch land using names such as "Headquarters Ranch," "East El Milagro Pasture," and "Las Piedras Pasture." As a result of the partition, Ileana and Leon Oscar, Sr. jointly and equally owned the full surface estate of the 1,058 acres "situated partly in the north one-half ... of Porcion 21 and partly in Porcion 22, known as Las Piedras Pasture." In the 1978 Exchange Deed, Leonor exchanged her full interest in the surface estate of Headquarters Ranch for Ileana's ½ sur-

face interest in the "1,058 acres of land ... known as 'Las Piedras Ranch.'" Both Leonor and Ileana expressly reserved their undivided mineral interests. Thus, at the time Leonor executed her Will in 1987, she owned a ½ interest in the surface estate of Las Piedras Ranch (with the other ½ interest owned by her son Leon Oscar, Sr.), and an undivided ¼ mineral interest in the whole 7,016 acres, which included Las Piedras Ranch. Each of the Older Generation's 1/12 undivided mineral interest in the whole similarly remained unchanged by the partition and exchange deeds.

The disputed portion of the chain of title to Leonor's ¼ mineral interest in Las Piedras Ranch begins in 1990, when Leonor's Will was probated. In her Will, Leonor devised to her son Leon Oscar, Sr. *"all of my right, title and interest in and to Ranch 'Las Piedras'* out of Porciones 21 & 22 ... during the term of his natural life." (emphasis added). Leonor's Will further provided that, upon Leon Oscar, Sr.'s death, *"the title* shall vest in his children then living in equal shares." (emphasis added). Finally, Leonor's Will contained a residuary clause providing that the residue of her estate would pass in equal shares to her three children, Leon Oscar, Sr., Ileana, and Rodolfo (i.e., the Older Generation). Leon Oscar, Sr.'s life estate terminated when he died in 2006. The current dispute concerns whether "the title" inherited by Leon Oscar, Sr.'s three children, Leon, Jr., Minerva, and Rosalinda (who are Leonor's grandchildren and are referred to collectively as "the Grandchildren")[2] was only to Leonor's ½ interest in the surface estate of Las Piedras Ranch, or also included Leonor's ¼ mineral interest in Las Piedras Ranch.

2. The third child, Rosalinda, originally participated in the lawsuit brought by her siblings but nonsuited her claims. Therefore, the term

"Grandchildren" as used in this opinion refers only to Leon, Jr. and Minerva.

In 2010, the Grandchildren filed suit against ConocoPhillips [3] and their uncle Rodolfo and his company El Milagro Minerals, Ltd., seeking the following declarations: (1) together the Grandchildren own a ¼ mineral interest in Las Piedras Ranch pursuant to the chain of title; (2) the three oil and gas leases with ConocoPhillips that were signed by the Older Generation in 1993 and 1997 (the "Leases") are not binding on their collective ¼ mineral interest because, as contingent remaindermen of their father's life estate at that time, their signatures on the leases were required; and (3) they are entitled to a cotenancy accounting and payment for their proportionate share of production by ConocoPhillips pursuant to the Leases. In addition to their request for declaratory judgment on the above matters, the Grandchildren pled a trespass to try title claim and a cotenancy accounting claim for their share of gas proceeds under the Texas Natural Resources Code, and pled for recovery of their attorney's fees under the Natural Resources Code. The Grandchildren also pled other claims for fraud and bad faith cotenancy, which were dismissed.

Multiple summary judgment motions were filed by all parties and ruled on by the trial court over the four-year course of the litigation. In relevant part, the trial court granted partial summary judgment in favor of the Grandchildren on their trespass to try title claim and held that the Leases are not binding as to their mineral interests. The trial court denied ConocoPhillips's motion for partial summary judgment on "will construction," and denied summary judgment on ConocoPhillips's affirmative defenses of limitations, ratification, and estoppel. Finally, the trial court granted the Grandchildren's summary judgment motions on cotenancy accounting and denied ConocoPhillips's competing motion. After summary judgment was granted in the Grandchildren's favor on their declaratory judgment, trespass to try title, and cotenancy accounting claims, the issue of attorney's fees was decided in a bench trial.

On May 11, 2015, the trial court signed its final judgment, which referred to and incorporated the prior summary judgment orders, and declared that (1) Leon Jr. and Minerva are each the "fee simple owner of 1/12 of the minerals underneath the 1058 acres of land … known as Las Piedras Ranch … more particularly described on the attached Exhibits 'A' and 'B,'" and (2) the three oil and gas leases signed in 1993 and 1997 and owned by ConocoPhillips "are not binding and are ineffective against the above mentioned mineral interests." The judgment further declared that the Grandchildren are entitled to recover a cotenancy accounting from ConocoPhillips and awarded them approximately $3.7 million each for their share of production through October 2012. In addition, the Grandchildren were awarded approximately $950,000 in prejudgment interest and $1,125,000 in attorney's fees through the judgment date. The total amount of the judgment awarded against ConocoPhillips is approximately $11.7 million. ConocoPhillips appealed, as did Rodolfo Ramirez and El Milagro Minerals.

## CONOCOPHILLIPS'S APPEAL

On appeal, ConocoPhillips raises the following issues asserting the trial court erred in: (1) granting partial summary judgment for the Grandchildren on their trespass to try title claim and denying ConocoPhillips's request for partial sum-

---

**3.** The Grandchildren also sued EOG Resources, which was the original lessee on Las Piedras Ranch and from whom ConocoPhillips bought two of the leases in 1995. The Grandchildren ultimately settled with EOG.

mary judgment on its "surface only-will construction" theory; (2) denying Conoco-Phillips's motion for summary judgment on its affirmative defense of limitations, and granting Leon Jr.'s cross motion on limitations; (3) denying ConocoPhillips's motion for summary judgment on its affirmative defenses of ratification and estoppel; (4) granting summary judgment for the Grandchildren on their cotenancy accounting claim and denying ConocoPhillips's cross-motion; (5) awarding attorney's fees and basing the award on insufficient evidence to support the amount; and (6) making other miscellaneous errors in the judgment. We first address the question of who owns title to Leonor's ¼ mineral interest in Las Piedras Ranch, as all of the other issues are dependent on our resolution of the title issue.

### Title to Leonor's ¼ Mineral Interest in Las Piedras Ranch

In ConocoPhillips's view, "this is a will construction case" because title to the disputed ¼ mineral interest turns on what Leonor meant by the name "Ranch Las Piedras" in her Will when she conveyed a life estate in "all of my right, title, and interest in and to Ranch Las Piedras" to her son Leon Oscar, Sr. ConocoPhillips bases its challenges to the Grandchildren's summary judgment on title, and to the denial of its summary judgment motion on "will construction," largely on this premise.

#### Grandchildren's Partial Summary Judgment Motions on Trespass to Try Title

With respect to the Grandchildren's summary judgment motions on their trespass to try title claim, ConocoPhillips argues the trial court erred in granting their motions because they failed to expressly move for summary judgment on "construction of Leonor's Will." See TEX. R. CIV. P. 166a(c) (motion for summary judgment must state the specific grounds); see also

McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 339 (Tex. 1993) (same).

We disagree with ConocoPhillips's premise that this is a "will construction case." At its heart, this is a title dispute in which the chain of title includes Leonor's Will, as well as Leon Juan's will, among the deeds and other documents in the chain. No party brought suit to contest or construe Leonor's Will. See, e.g., San Antonio Area Found. v. Lang, 35 S.W.3d 636, 639 (Tex. 2000) (action to construe a will brought in probate court). The claim which the Grandchildren pled and specifically moved for summary judgment on was trespass to try title, which is the method for determining title to real property. See TEX. PROP. CODE ANN. § 22.001(a) (West 2014); see also Martin v. Amerman, 133 S.W.3d 262, 265 (Tex. 2004) (trespass to try title is typical method used to "clear problems in chains of title"). We have held that an action to resolve a dispute over title to real property is, in effect, a "trespass to try title action" regardless of the form the action takes and the type of relief sought. Longoria v. Lasater, 292 S.W.3d 156, 165 (Tex. App.—San Antonio 2009, pet. denied). To recover in a trespass to try title action, the plaintiff must recover on the strength of his or her own title, not a weakness in the opponent's title. Id. The plaintiff has the burden to prove its title to the disputed property and may do so by proving "a regular chain of conveyances from the sovereign." Martin, 133 S.W.3d at 265; Longoria, 292 S.W.3d at 165.

In support of their summary judgment motions, the Grandchildren submitted the abstract of the chain of title, a supplement to the abstract with copies of the title documents, plus other summary judgment evidence such as affidavits. It is axiomatic that, in examining the documents in the chain of title to determine whether the Grandchildren conclusively

proved their right to title, the trial court necessarily read and interpreted the relevant language in each document in the chain, including Leonor's Will, according to the applicable rules of construction. *See Longoria*, 292 S.W.3d at 166 (trial court construes the deeds and other instruments in the chain of title according to the rules of contract construction as a matter of law); *see also Netherton v. Cowan*, No. 04-12-00627-CV, 2013 WL 4091773, at *3 (Tex. App.—San Antonio Aug. 14, 2013, no pet.) (mem. op.) (in construing a will, court must ascertain testator's intent from "four corners" of will, relying on the "plain, ordinary, and generally accepted meanings, unless the instrument itself shows such terms to have been used in a technical or a different sense"). It is not uncommon for a will to be one of the documents in the chain of title used to prove ownership in a trespass to try title action. It was not necessary for the Grandchildren to separately move for summary judgment on "construction" of Leonor's Will, or construction of any other document contained in the chain of title, in order to obtain summary judgment on their trespass to try title claim. We conclude that Conoco-Phillips's argument that the Grandchildren were not entitled to summary judgment on their trespass to try title claim because they failed to expressly request construction of Leonor's Will is without merit.

### *Scope of Life Estate Conveyed by Leonor's Will—Did It Include the ¼ Mineral Interest?*

■ ConocoPhillips alternatively asserts on appeal that, by granting summary judgment for the Grandchildren on title, the trial court misconstrued the scope of the life estate granted by Leonor's Will. ConocoPhillips also argues the trial court erred in denying its partial summary judgment motion presenting its "surface only-will construction" ground. ConocoPhillips asserts that it conclusively established, based on surrounding circumstances at the time Leonor executed her Will, that Leonor intended the name "Ranch Las Piedras" to refer to the surface estate only. The Grandchildren argue that ConocoPhillips failed to preserve its "surface only" argument because it did not timely present that specific argument to the trial court; they also argue the trial court did not rule on the merits of ConocoPhillips's motion. Based on the record before us,[4] it is apparent that the trial court considered the "surface only" argument made by ConocoPhillips and rejected it prior to entering the final judgment in this case. We will therefore consider ConocoPhillips's "surface only" argument on appeal.

### *Arguments of the Parties*

■ The parties agree the plain language of the life estate devise in Leonor's Will is not ambiguous, but each side argues a different interpretation as a matter of law. The Grandchildren argue the life estate Leonor devised to Leon Oscar, Sr. included her ¼ mineral interest in Las Piedras Ranch, while ConocoPhillips argues the life estate was limited to Leonor's ½ interest in the surface estate of Las Piedras Ranch. Both sides generally rely on the same summary judgment evidence, primarily the chain of title documents, plus affidavits and deposition excerpts supporting each side's competing interpretation of

---

4. In October 2014, the trial court held a hearing on ConocoPhillips's summary judgment motion presenting its "surface only-will construction" argument. Although there was some discussion about the court having already ruled on title to the ¼ mineral interest, the court ultimately stated that it had no problem ruling on ConocoPhillips's motion "even if I've already ruled on it before." The court then proceeded to hear substantive arguments on the motion, and denied the motion in an order signed in December 2014.

the scope of the life estate. On appeal, ConocoPhillips does not challenge any of the summary judgment evidence submitted by the Grandchildren, other than their "assumed meaning" of Leonor's Will.

In its responses to the Grandchildren's summary judgment motions on title, ConocoPhillips argued that Leonor's Will did not provide a description of "Ranch Las Piedras," and that the Grandchildren had failed to present any summary judgment evidence establishing the meaning of the phrase. Therefore, ConocoPhillips asserted the Grandchildren did not conclusively establish their title to the disputed mineral interest, and were not entitled to summary judgment on their trespass to try title claim.

In moving for summary judgment on its argument that the life estate Leonor devised to Leon Oscar, Sr. was only in her ½ surface interest, ConocoPhillips asserted that because Leonor's Will did not define the name "Ranch Las Piedras," the trial court was required to look to "surrounding circumstances" to construe Leonor's intent with respect to the term's meaning. *See Lang*, 35 S.W.3d at 639 (when construing a will, if a term is open to more than one construction, court may consider extrinsic evidence outside the four corners of written will, such as surrounding circumstances at time of execution, to ascertain testator's intent). ConocoPhillips argued in its motion and argues on appeal that, at the time Leonor executed her Will in 1987, the family had a history of severing the surface from the mineral estate, and then partitioning and exchanging the various surface estates among themselves while leaving the undivided mineral interests in the whole 7,016 acres untouched. In support, ConocoPhillips attached the affidavit of its land title expert, Mr. Cummings, who stated that the chain of title documents showed the 7,016-acre surface estate had been severed from the underlying mineral estate and then partitioned among the Ramirez family members. Cummings further stated that the Ramirez family had historically treated the severed mineral estate, including the mineral estate under Las Piedras Ranch, as an undivided interest belonging to the entire family. ConocoPhillips stresses that the Ramirez family, and Leonor herself, used express reservation clauses in the 1975 Partition and 1978 Exchange Deed to clarify that their undivided interests in the mineral estate underlying the whole acreage were not affected by the partition and exchange. ConocoPhillips highlights the absence of any *inclusive* reference to her mineral interest in Leonor's Will as showing that she did not intend the life estate to extend to her mineral interest. ConocoPhillips further relies on the fact that Leonor used the name "Ranch Las Piedras" when referring to the surface estate in the 1975 Partition and 1978 Exchange Deed, arguing that shows the name means only the surface estate. ConocoPhillips asserts that, based on these "surrounding circumstances," Leonor only intended to devise a life estate in the surface of Las Piedras Ranch to Leon Oscar, Sr. As a result, Leon Oscar, Sr.'s children (i.e., the Grandchildren) did not inherit Leonor's ¼ mineral interest in Las Piedras; rather, the ¼ mineral interest passed under the residuary clause of Leonor's Will to her children (i.e., the Older Generation).

The Grandchildren's argument in their summary judgment motion was that because Leonor's Will plainly conveyed a life estate in "all of my right, title and interest ... in Ranch Las Piedras," their father Leon Oscar, Sr. received a life estate in Leonor's full interest in Las Piedras Ranch, i.e., her ½ surface interest and her ¼ mineral interest. The Grandchildren reason that the meaning of the phrase "*all my interest*" is plain and clear, and there

is no need to go outside the four corners of Leonor's Will to understand the scope of her devise. *See, e.g., Lang*, 35 S.W.3d at 639 (term "real property" in will was not susceptible to more than one understanding, and thus did not require extrinsic evidence to understand). The Grandchildren stress that there was no express reservation of Leonor's ¼ mineral interest from the life estate devise, and point out that Leonor knew how to make an express mineral reservation and had done so in the past. The Grandchildren rely on the general principle that, absent an express reservation, a conveyance of land includes both the surface and the underlying minerals. *See Sharp v. Fowler*, 151 Tex. 490, 252 S.W.2d 153, 154 (1952). In response to ConocoPhillips's assertion that the name "Ranch Las Piedras" is not defined in the Will and must be construed by looking to extrinsic evidence, the Grandchildren point out that "Ranch Las Piedras" was described by its physical location, "out of Porciones 21 & 22, and situated in Zapata County, Texas," in Leonor's Will. They also assert the name had an accepted meaning to Leonor. Therefore, the Grandchildren assert that, based on the plain language of the life estate devise in Leonor's Will, and the other documents in the chain of title, they inherited Leonor's ¼ mineral interest in Las Piedras Ranch in equal shares, i.e., 1/12 each, upon the death of their father Leon Oscar, Sr.

*Analysis*

■ As to whether the trial court misconstrued the scope of the life estate devise in Leonor's Will, we hold it did not. The meaning of the words "all of my right, title and interest in and to Ranch Las Piedras" can be ascertained according to their plain language within the four corners of the Will; therefore, the use of extrinsic evidence is inappropriate. *See Lang*, 35 S.W.3d at 639. Leonor's use of the word "all," with no qualifiers or reser-

vations, is comprehensive by its nature and does not require explanation. Moreover, the general principle of conveyances is that absent an express reservation of a mineral interest, it is conveyed along with the surface; an *inclusive* reference to the mineral interest is not required. *See Sharp*, 252 S.W.2d at 154. We also disagree that the name "Ranch Las Piedras" is open to more than one reasonable construction. The Will identifies "Ranch Las Piedras" by its physical location as "out of Porciones 21 & 22, and situated in Zapata County, Texas." Use of a name to refer to the physical land on the surface does not mean the conveyance excludes the minerals beneath it. *Id.* ("To describe land is to outline its boundaries so that it may be located on the ground, and not to define the estate conveyed therein."). Extrinsic evidence may not be used to create doubt as to the meaning of the name when the words used in the Will are unambiguous. *See Lang*, 35 S.W.3d at 639; *see also Longoria*, 292 S.W.3d at 166 (mere disagreement about interpretation of deed does not make it ambiguous; an instrument is ambiguous only if, after application of the rules of construction, it is unclear which meaning is the correct one).

Having reviewed all the summary judgment evidence *de novo*, we conclude the Grandchildren conclusively established their record title to Leonor's ¼ mineral interest in Las Piedras Ranch as a matter of law. *See* Tex. R. Civ. P. 166a; *see also Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005) (when both sides move for summary judgment on the same issue and the trial court grants one motion and denies the other motion, the appellate court reviews the summary judgment evidence presented by both sides and determines all questions presented); *see Hejl. v. Wirth*, 161 Tex. 609, 343 S.W.2d 226, 226 (Tex. 1961) (plaintiff must recover

on strength of his own title in a trespass to try title case); *see also Cross v. Thomas*, 264 S.W.2d 539, 542 (Tex. Civ. App.—Fort Worth 1953, writ ref'd n.r.e.) (whether a particular person owns record title is a question of law). Based on the plain language on the face of the documents in the chain of title, we hold the trial court properly granted summary judgment for the Grandchildren on their claim of title to the disputed ¼ mineral interest in Las Piedras Ranch, and properly denied summary judgment for ConocoPhillips on the issue of title.[5]

### *ConocoPhillips's Affirmative Defenses*

■ ConocoPhillips asserts the trial court erred in denying its motions for summary judgment on its affirmative defenses of limitations, ratification, and estoppel. A defendant moving for summary judgment on an affirmative defense must conclusively establish each element of the defense to prevail. TEX. R. CIV. P. 166a(b); *Long Distance Int'l, Inc. v. Telefonos de Mexico, S.A. de C.V.*, 49 S.W.3d 347, 350-51 (Tex. 2001).

#### *Statute of Limitations*

■ Cross-motions for summary judgment on limitations were filed, and the trial court denied ConocoPhillips's motion and granted Leon, Jr.'s motion. Therefore, we review the motions, responses, and all summary judgment evidence de novo, determine all questions presented, and render the appropriate judgment if the trial court erred. *Valence*, 164 S.W.3d at 661. To be entitled to summary judgment on the affirmative defense of limitations, a defendant must prove as a matter of law: (1) the date on which the limitations period commenced, i.e., when the cause of action accrued, and (2) that the plaintiff filed its petition outside the applicable limitations period. *In re Estate of Denman*, 362 S.W.3d 134, 144 (Tex. App.—San Antonio 2011, no pet.).

■ The Grandchildren filed their lawsuit on November 19, 2010. In its second amended answer, ConocoPhillips pled, in relevant part, that Leon, Jr.'s claims[6] are barred by the applicable statutes of limitation, citing to the two-year and four-year limitations periods set forth in sections 16.003(a) and 16.004(a), and to the residual four-year limitations period in section 16.051 of the Texas Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.003(a), 16.004(a), 16.051 (West Supp. 2016 & 2002 & 2015). In its "Second Amended Motion for Summary Judgment as to All Claims of Plaintiffs Leon O. Ramirez, Jr. and Rosalinda Ramirez Eckhardt," ConocoPhillips asserted that "all of Leon, Jr.'s claims" are barred by limitations. Leon, Jr. argues on appeal that ConocoPhillips failed to specifically move for summary judgment on limitations against his trespass to try title and cotenancy accounting claims. We disagree. ConocoPhillips's summary judgment motion

---

5. To the extent ConocoPhillips argues on appeal that the trial court abused its discretion in denying Conoco's motion to reconsider and reopen the December 6, 2012 summary judgment order, we hold there was no abuse of discretion. The trial court considered the same arguments when it denied ConocoPhillips's 2014 summary judgment on will construction.

6. ConocoPhillips agrees that limitations does not apply against Minerva because she is an incapacitated person. However, Rodolfo Ramirez and El Milagro Minerals, Ltd. still assert a limitations bar against Minerva. Under the applicable statutes, the limitations period does not run against an incapacitated person. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.001(b), 16.022(b) (West Supp. 2016 & 2002). We therefore reject the limitations argument made by Rodolfo Ramirez and El Milagro Minerals, Ltd. as to Minerva Ramirez.

asserted a limitations bar against *all* claims brought by Leon, Jr. In addition, in its motion ConocoPhillips specifically asserted that limitations .bars Leon, Jr.'s claim for a declaratory judgment that "(1) he owns a 1/12 undivided interest in the mineral estate" underlying Ranch Las Piedras, and that (2) the three Leases are " 'ineffective' as to the undivided [mineral] interest he claims to own." In addition, ConocoPhillips asserted that Leon, Jr.'s "suit for an accounting as an unleased cotenant is time barred" under the four-year statute of limitations in section 16.004. *Id.* § 16.004(a)(3) (debt).

In its summary judgment motion, as it does on appeal, ConocoPhillips characterized Leon, Jr.'s title claim asserting ownership of the disputed mineral interest as "an action to construe a will," and argued the claim was barred because the four-year statute of limitations for a will-construction suit began running in 1990 when Leonor's Will was probated. *See Estate of Denman*, 362 S.W.3d at 144 (holding that residual four-year limitations period of Texas Civil Practice and Remedies Code section 16.051 applies to declaratory judgment action to construe a will); *see also In re Estate of Florence*, 307 S.W.3d 887, 890 (Tex. App.—Fort Worth 2010, no pet.) (same). This argument fails because we have rejected ConocoPhillips's argument that Leon, Jr.'s suit to establish title was actually a suit to construe Leonor's Will.

■ The success of ConocoPhillips's limitations defense depends upon the accrual date for Leon, Jr.'s claims, which is a question of law. *Estate of Denman*, 362 S.W.3d at 144 (determination of the date on which a cause of action accrues is a question of law for the court). A cause of action generally accrues, and limitations begins to run, when facts come into existence that authorize a party to seek a judicial remedy. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003). This rule generally prevails regardless of when the claimant learns of his injury. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990). A cause of action under the Declaratory Judgment Act does not accrue until there is an actual controversy between the parties. *Estate of Denman*, 362 S.W.3d at 144.

■ ConocoPhillips's argument is that Leon, Jr.'s claims accrued in 1990 when the Older Generation (including his father Leon Oscar, Sr. as the life tenant) took the "overt acts" of signing oil and gas leases on Las Piedras Ranch, thereby creating an actual controversy with the Grandchildren, who were contingent remaindermen of their father's life estate. *See Murphy v. Honeycutt*, 199 S.W.2d 298, 298-99 (Tex. Civ. App.—Texarkana 1946, writ ref'd) (remaindermen's cause of action for construction of will accrued when the life tenant executed a deed conveying the property covered by the will). The Older Generation also signed additional leases covering Las Piedras Ranch in 1993 and 1997 (i.e., the Leases). Memoranda of the leases were filed in the county's public records, but not the leases themselves. The Older Generation also began receiving royalty payments from the production on the leases. Conoco-Phillips asserts that Leon, Jr. therefore had either actual or constructive notice of the leases and royalty payments on production, i.e., the facts giving rise to his claim, in 1990 at the earliest, and certainly no later than 1997;[7] therefore, his 2010 lawsuit was barred by limitations.

---

7. On appeal, ConocoPhillips also argues the Older Generation's signing of a stipulation of interest in 1997, in which they claimed to own Leonor's ¼ mineral interest in Las Pie-

dras Ranch, placed Leon, Jr. on notice of his claims. However, this was not included as a ground for summary judgment in ConocoPhillips's motion. A party cannot raise new rea-

ConocoPhillips also asserts that neither the discovery rule nor fraudulent concealment applied to toll the limitations period because the drilling activities were continuous, open, and obvious, and the Leases, well permits, and production reports were matters of public record and therefore easily discoverable. *See HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998) (discovery rule); *see also Natural Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 198 (Tex. 2003) (failure to know status of leases did not suspend limitations); *BP America Prod. Co. v. Marshall*, 342 S.W.3d 59, 69-70 (Tex. 2011) (plaintiffs' alleged ignorance of what they owned did not toll limitations).

Here, the relevant issue is whether Leon, Jr.'s claims accrued during his father's life tenancy, while Leon, Jr. was a contingent remainderman, or did not accrue until his father's death in 2006, when Leon, Jr.'s contingent interest vested and he had the right to possession. A well-established line of authority holds that, "[t]he statutes of limitation as to an interest in land, which one owns as a remainderman, subject to a life estate in another, do not begin to run in favor of one in possession until the death of the life tenant." *Estate of McWhorter v. Wooten*, 622 S.W.2d 844, 846 (Tex. 1981) (internal citations omitted) (suit for trespass to try title); *Garza v. Cavazos*, 148 Tex. 138, 221 S.W.2d 549, 553 (1949) (suit for trespass to try title); *Evans v. Graves*, 166 S.W.2d 955, 958 (Tex. Civ. App.—Dallas 1942, writ ref'd w.o.m.) (holding that remainderman was not compelled to bring her suit for trespass to try title until her right of possession accrued upon the life tenant's death, even though she might have been able to bring suit as a contingent remain-

derman to quiet title during the life estate). According to the terms of Leonor's Will, Leon, Jr.'s remainder interest was contingent on him surviving the life tenant, i.e., his father. *See Guilliams v. Koonsman*, 154 Tex. 401, 279 S.W.2d 579, 582 (1955) (explaining the difference between a contingent and a vested remainder); *see also Enserch Exploration, Inc. v. Wimmer*, 718 S.W.2d 308, 310 (Tex. App.—Amarillo 1986, writ ref'd n.r.e.) (citing the "well-established rule" that a "life tenant is entitled to exclusive possession and control of the property comprising the life estate and the remaindermen are not entitled to possession thereof until the life estate terminates"). Thus, we disagree with ConocoPhillips that Leon, Jr.'s claims accrued in 1990 when the first leases on Las Piedras Ranch were signed (or when the Leases were signed in 1993 and 1997) because those events occurred prior to the death of Leon Oscar, Sr., and thus prior to the vesting of Leon, Jr.'s interest in 1/12 of the mineral estate of Las Piedras Ranch. *See Estate of McWhorter*, 622 S.W.2d at 846; *Garza*, 221 S.W.2d at 553; *Evans*, 166 S.W.2d at 958. We hold that the limitations period for Leon, Jr.'s claims did not start running until the date of Leon Oscar, Sr.'s death on November 27, 2006, when Leon, Jr.'s remainder interest vested and became a possessory interest; therefore, his lawsuit was timely filed within the applicable limitations periods. The trial court did not err in denying ConocoPhillips's motion for summary judgment on limitations and in granting Leon, Jr.'s motion on limitations.

### Ratification and Estoppel

 ConocoPhillips argues the trial court also erred in denying its motion for summary judgment on the affirmative de-

---

sons why a summary judgment should have been granted for the first time on appeal. Tex. R. Civ. P. 166a(c); *Garcia v. Garza*, 311

S.W.3d 28, 44 (Tex. App.—San Antonio 2010, pet. denied).

fenses of ratification and estoppel. Conoco-Phillips asserts that Leon, Jr. signed ratifications of the 1993 Leases and took other actions seeking to benefit from the Leases which equitably estop him from asserting the Leases are invalid as to his mineral interest.

As to ratification, ConocoPhillips moved for summary judgment on the basis of two ratifications of the 1993 Leases purportedly signed by Leon, Jr. (the "Ratifications").[8] However, there is undisputed summary judgment evidence that Leon Oscar, Sr.'s signature, not Leon, Jr.'s, appears on the Ratifications. In his affidavit attached to his summary judgment motion on title, Leon, Jr. swore that he did not sign the two Ratifications that pertain to the 1993 Leases; his father signed them. Leon, Jr. stated that his father's signature was very unique and distinctive, and in no way resembled his own signature, and he provided documents with the known signature of each for comparison. The admitted signature of Leon, Jr. that appears on the April 26, 1990 ratification of the 1990 Enron lease is very obviously not the same signature that appears on the two Ratifications dated January 27, 1994 and February 10, 1994 pertaining to the 1993 Leases. Those signatures match the known signature of Leon Oscar, Sr. Moreover, the typed name under the signature lines on the Ratifications states "Leon O. Ramirez, Jr. (Lessor) (aka Leon O. Ramirez)." Leon, Jr. further testified that he did not give his father authority to sign for him, and ConocoPhillips presented no summary judgment evidence refuting that statement. The record is thus conclusive that Leon, Jr. did not sign the Ratifications of the 1993 Leases himself and did not authorize his father Leon, Sr. to sign for him.

■ ConocoPhillips also argues that Leon, Jr. further ratified the Leases when he signed division orders pertaining to the payment of royalties to Leon Oscar, Sr.'s estate after his death. However, the record shows that Leon, Jr. clearly signed the division orders in his capacity as co-executor of Leon Oscar, Sr.'s estate, not in his individual capacity as he sued in the instant case. Further, under the chain of title, Leon Oscar, Sr. owned a fee simple interest in the minerals underneath Las Piedras Ranch which he inherited from his father Leon Juan, that was separate and distinct from the mineral interest owned by Leonor. Therefore, Leon Oscar, Sr. was also receiving royalties as a lessor of his other undivided mineral interest in Las Piedras Ranch, separate from the life estate he received from Leonor. Accordingly, we hold the trial court did not err in denying ConocoPhillips's motion for summary judgment on ratification.

■ As to estoppel, ConocoPhillips argues that the Grandchildren were equitably estopped to deny the validity of the Leases because they had taken contrary positions in the past ratifying the validity of the Leases and seeking their benefits. *See Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000) (quasi-estoppel precludes a party from "asserting, to another's disadvantage, a right inconsistent with a position previously taken"). In its summary judgment motion, ConocoPhillips relied on the Grandchildren's "Offer in Compromise" with the IRS seeking to reduce the estate tax liability from their father's estate based on his improper retention of all the royalties under the Leases, and their action in making a claim against their father's estate for

---

8. ConocoPhillips's summary judgment motion also referred to Leon, Jr.'s April 26, 1990 ratification, which he admitted signing. How-ever, because it pertained to the 1990 lease with Enron/EOG, that lease is not at issue in this case.

their share of royalties from Las Piedras production, characterizing these actions as a recognition of the Leases' validity. *See Sun Operating L.P. v. Oatman,* 911 S.W.2d 749, 756 (Tex. App.—San Antonio 1995, writ denied) (acceptance of royalties with knowledge that they were in payment of royalty from mineral deed constituted ratification lease). ConocoPhillips asserts these actions by the Grandchildren amounted to a ratification of the effectiveness of the Leases as to the disputed ¼ mineral interest in Las Piedras Ranch, and estopped them from taking a contrary position in this lawsuit.

■ The Grandchildren point out that ConocoPhillips's arguments are based on the false premise that the IRS claim and their claim against their father's estate were for "royalty payments," and thus depended on the Leases being valid, when the true nature of the claims was for their share of unpaid gas proceeds based on repudiation of the Leases. The record supports the Grandchildren's characterization of these claims. The Offer in Compromise submitted to the IRS sought to reduce the value of Leon Oscar, Sr.'s estate by an indebtedness amount consisting of the Grandchildren's unpaid share of gas proceeds, not royalties, as unleased cotenants. As ConocoPhillips quotes in its reply brief, "Plaintiffs told the IRS that Leon Oscar was 'not entitled to any portion of the gas proceeds relating to the life estate mineral interest in the Wells' and that Leon Oscar 'received gas proceeds in excess of his royalty fractional interest.'" The Grandchildren's claim against their father's estate is similarly based on an indebtedness he owed to them as contingent remaindermen of the life estate in the minerals, and does not constitute a ratification of the

Leases as to the Grandchildren's mineral interests. The Grandchildren point out that they have never denied that the Leases were and are effective and binding on the Older Generation's mineral interests, and that the Older Generation was and is entitled to receive royalties from those Leases in the proportion of their *correct* ownership interests. We hold the trial court did not err in denying ConocoPhillips's summary judgment motion on the affirmative defense of estoppel.

### Cotenancy Accounting of Production and Recovery of Unpaid Oil and Gas Proceeds

#### Right to Receive Cotenancy Accounting and Share of Proceeds

In their Fourth Amended Petition, the Grandchildren pled that, by producing minerals from Las Piedras Ranch, ConocoPhillips was "guilty of waste of the life estate corpus" and failing to account for oil and gas production to them as unleased cotenants and contingent remaindermen.[9] The Grandchildren sought an equitable accounting of such production and recovery of unpaid gas proceeds under Chapter 91 of the Texas Natural Resources Code. Tex. Nat. Res. Code Ann. § 91.404 (West 2011). The trial court held in its final judgment that the Leases "are not binding and are ineffective against" the Grandchildren's mineral interests in Las Piedras Ranch. *See MCZ, Inc. v. Smith,* 707 S.W.2d 672, 679 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.) (a life tenant who is the grantor on an oil and gas lease can only convey what he owns to the lessee, and may not bind the contingent remaindermen's interest without their joinder). As a result of the status of the Grandchildren as

---

9. The Grandchildren did not seek a cotenancy accounting from Rodolfo Ramirez or El Milagro Minerals, Ltd.

non-signing contingent remaindermen, they were unleased cotenants in the wells drilled on Las Piedras Ranch, and the trial court held they are entitled to a cotenancy accounting for their share of production from ConocoPhillips. *See Cox v. Davison,* 397 S.W.2d 200, 201 (Tex. 1965) (a cotenant who produces minerals from commonly owned property without having secured the consent of its cotenants is accountable to them for "the value of the minerals taken less the necessary and reasonable cost of producing and marketing the same"); *Prize Energy Resources, L.P. v. Cliff Hoskins, Inc.,* 345 S.W.3d 537, 564 (Tex. App.—San Antonio 2011, no pet.) (citing the long established rule in Texas that a cotenant has the right to extract minerals from common property without first obtaining consent from his cotenants, but must account to them on the basis of the value of the minerals taken, less the necessary and reasonable costs of production and marketing); *see also* TEX. NAT. RES. CODE ANN. §§ 91.402-.403 (West 2011) (lessee's duty to pay oil and gas proceeds within certain time period). To the extent that ConocoPhillips challenges the trial court's holding that the Leases are not binding on the Grandchildren's mineral interests [10] and that they are entitled to a cotenancy accounting of production and recovery of their share of proceeds, we overrule the challenge. *See MCZ,* 707 S.W.2d at 680 (lease, not joined in by remaindermen, was ineffective to authorize drilling in derogation of the remaindermen's rights); *id.* at 676 (operator of well became the producing cotenant to the non-signing remaindermen's interest, and its production

triggered its duty under Texas law to account to the remainder interests for the minerals produced, less proportionate reasonable costs).

*Calculation of Cotenancy Accounting*

With respect to calculation of the accounting, the record reflects that, at a pretrial conference in October 2012, ConocoPhillips agreed to submit a cotenancy accounting for Well Nos. 3 through 11 [11] in accordance with industry standards "from the beginning of production until present day." ConocoPhillips's expert in oil and gas accounting, Rodney Sowards, prepared three "net profits" accountings based on the entire drilling enterprise on the Ramirez leases and ending in October 2012. Each of Sowards's accountings had a different start date and total net profit amount—$32,083,039 for the period beginning in August 1990, the date of first production; $8,531,326 for the period beginning in November 2006, the date of Leon Oscar, Sr.'s death and the vesting of the remainder interests; and $2,503,717 for the period beginning in November 2008, two years before the Grandchildren filed their lawsuit. The Grandchildren filed a motion for summary judgment on cotenancy accounting which was based on Sowards's accounting but included adjustments to his calculations of revenue and deductible costs. The Grandchildren's motion relied on Sowards's 416-page accounting, plus the previously filed documents in the chain of title, documents detailing the fractional interests, production amounts and costs, and an affidavit by their expert, Luciano A. Rodriguez, an oil and gas attorney, detailing adjustments they characterized as

---

**10.** It is undisputed that the Grandchildren did not sign the Leases.

**11.** Eleven wells total were drilled on the Ramirez leases. Three were drilled by EOG before Conoco purchased the leases in 1995. Of those first three wells, Well No. 1 was drilled

under the 1983 lease which is not at issue in this case, Well No. 2 was a dry hole drilled under the 1990 lease, and Well No. 3 was a producing well at the time ConocoPhillips acquired the leases from EOG in January 1995.

"necessary as a matter of law" to correct errors in ConocoPhillips's accounting. After considering ConocoPhillips's objections and response, the trial court granted the Grandchildren's summary judgment motion and made all the requested adjustments.

In its final judgment, the trial court stated that its award of the cotenancy accounting and payment was made under equitable and common law principles, as well as under the Texas Natural Resources Code. The trial court explained that, based on its prior summary judgment order dismissing the bad faith cotenancy claim against ConocoPhillips, the company was "entitled to deduct production and marketing costs" in calculating the cotenancy accounting. It also found that the cotenancy accounting provided by ConocoPhillips only went to the end of October 2012, and that ConocoPhillips had failed to supplement its accounting as agreed. Based on those findings, the trial court ordered that Leon, Jr. and Minerva each recover from ConocoPhillips the sum of $3,764,489 as the amount due at the end of October 2012, together with prejudgment interest of $951,546 computed from November 27, 2006 until March 20, 2015, plus a per diem of $283.63 from March 20, 2015 until the date of the judgment, i.e., May 11, 2015.

On appeal, ConocoPhillips raises several challenges to the trial court's calculation of the amount of the cotenancy accounting and payment awarded to the Grandchildren. ConocoPhillips argues the trial court erred in granting the Grandchildren's summary judgment motion and making their requested adjustments to the "net profits" cotenancy accounting that Sowards prepared on behalf of ConocoPhillips. ConocoPhillips also argues the affidavit by attorney Luciano A. Rodriguez which was attached to the Grandchildren's summary judgment motion should have

been struck on the basis that he was unqualified to testify about Sowards's cotenancy accounting. We begin with the issue of whether Rodriguez's affidavit was competent summary judgment evidence on the accounting issue.

*Affidavit of Luciano Rodriguez*

In the trial court, ConocoPhillips moved to strike Luciano Rodriguez's affidavit because he had "no professional accounting experience and no experience in oil and gas accounting;" therefore, he was unqualified to testify about errors in Sowards's cotenancy accounting. The motion to strike was denied. On appeal, ConocoPhillips argues Rodriguez's affidavit should have been stricken for that reason (i.e., not qualified), and because "an expert may not testify to pure questions of law." The second basis was not raised in the trial court, and may not be raised for the first time on appeal. *See* TEX. R. APP. P. 33.1(a).

Turning to Rodriguez's qualifications to testify about the cotenancy accounting, Rodriguez recited in his affidavit that he has been licensed as an attorney since 1975, and has thirty-nine years' experience representing oil and gas companies and mineral owners in "oil and gas title examination, transactions, mediation, arbitration and litigation." His legal services have included examining title to determine ownership issues pertaining to mineral interests, leases and production, negotiating, drafting and applying lease terms, and mediating disputes regarding oil and gas properties. After discussing the title issue with regard to the Grandchildren's mineral interests, Rodriguez states he was asked to opine on "whether the royalty burden in the cotenancy accounting prepared by ConocoPhillips is correct."

Rodriguez concluded that the royalty burden charged to the Grandchildren was incorrect based on oil and gas cotenancy

law and his review of the Grandchildren's summary judgment motions on title and the supporting evidence, the affidavit of ConocoPhillips's title expert Allen D. Cummings, two division order title opinions, several royalty deeds filed of record, and ConocoPhillips's own calculations of interests for each well. Rodriguez explained that, based on his review of the title documents, there are two types of royalties applicable to the Las Piedras Ranch, and he explained the legal difference between the two—a "basic royalty interest," which arises out of the subject leases and does not burden the unleased cotenants' share, and a "non-participating royalty interest," which arises out of a conveyance in the chain of title and does burden the cotenants' share. *See Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996); *see also Hamilton v. Morris Res., Ltd.*, 225 S.W.3d 336, 344 (Tex. App.—San Antonio 2007, pet. denied). Rodriguez concluded that Sowards's cotenancy accounting improperly charged *all* the royalties ConocoPhillips paid under the Leases, including the basic royalties which do not bind the Grandchildren's share, against the production. Rodriguez also concluded there were three conveyances of non-participating royalties by the Grandchildren's predecessors in the chain of title that properly burden the Grandchildren's share. Accordingly, Rodriguez opined that, based on "simple arithmetic," the royalty burden on the Grandchildren's share for each of Well Nos. 3 through 11 should be adjusted by deleting the basic royalties paid by ConocoPhillips under the Leases and applying only the non-participating royalties against the Grandchildren's share of production.

We conclude the trial court did not abuse its discretion in overruling ConocoPhillips's objection to Rodriguez's affidavit. *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 347 (Tex. 2015); *Cha-*

*vez v. Davila*, 143 S.W.3d 151, 154 (Tex. App.—San Antonio 2004, pet. denied). Rodriguez was qualified as an expert in oil and gas law based on his experience as detailed in his affidavit, and his opinion was based on his knowledge of such legal principles as applied to the pleadings and summary judgment evidence, the chain of title documents, and ConocoPhillips's own calculations of interest for each of the wells produced during discovery. *See* Tex. R. Evid. 702, 703. As the Grandchildren state, Rodriguez was not hired to prepare his own accounting, but rather to review the royalty deeds in the title documents and summarize the non-participating royalties applicable to the Grandchildren's share of production. Rodriguez testified that his calculations of the proper royalty burden were based on "a simple arithmetic calculation based on the applicable conveyances and reservations of royalty chargeable to Plaintiffs as ConocoPhillips did in calculations which [it] produced in this case pursuant to discovery requests." We conclude it was not necessary, in order for Rodriguez's opinion to be reliable, that Rodriguez be a certified public accountant or oil and gas accountant, and for him to perform the simple calculation to correct Sowards's royalty calculation by only including the royalty interests chargeable to the Grandchildren's interests based on oil and gas law and the title documents.

### Adjustments Made to ConocoPhillips's Cotenancy Accounting

The parties agree that the basic formula for computation of the cotenancy accounting is the proportionate market value of the minerals taken less the proportionate necessary and reasonable costs of producing and marketing the minerals. *Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419, 426 (Tex. 2008); *Prize Energy*, 345 S.W.3d at 564. ConocoPhillips argues the trial court erred, however, by making the fol-

lowing adjustments to Sowards's "net profits" cotenancy accounting: (i) starting the accounting on ConocoPhillips's acquisition date in January 1995 before the Grandchildren's remainder interests vested and became possessory interests; (ii) failing to allow ConocoPhillips to deduct its acquisition costs for Well Nos. 2 and 3 when the accounting was adjusted to begin in January 1995; (iii) failing to allow ConocoPhillips to claim the full 22.50% royalty payments made to other lessors under the Leases as costs chargeable to the Grandchildren's share of production; and (iv) failing to allow ConocoPhillips to deduct its "allocable cost of capital" in the accounting calculation.

█ With respect to the start date of the cotenancy accounting, ConocoPhillips argues the trial court erred in running the accounting from its January 1995 acquisition of the Leases rather than from November 2006, when Leon Oscar, Sr. died and the Grandchildren's remainder mineral interests became possessory interests. ConocoPhillips relies on caselaw stating that contingent remaindermen do not have a possessory interest in property until the termination of the life estate, and argues the Grandchildren were therefore not entitled to a share of the net profits as cotenants until they had a present right to possession. *See Enserch Exploration,* 718 S.W.2d at 310 (life tenant is entitled to exclusive possession and control over the life estate property during his lifetime). However, ConocoPhillips's argument overlooks the point that the Leases were never effective as to the Grandchildren's contingent remainder mineral interests because the Grandchildren did not execute the Leases. It is the non-binding nature of the Leases that requires the Grandchildren to be treated as unleased cotenants from 1995 forward. *See Cox,* 397 S.W.2d at 201; *see also MCZ,* 707 S.W.2d at 679. We

conclude the proper start date for the accounting is January 1995.

█ Second, ConocoPhillips argues that, when the trial court adjusted the accounting to begin in 1995, it should have allowed ConocoPhillips to deduct its costs for acquiring from EOG the already-producing Well No. 3 and the geological field information EOG developed by drilling the dry-hole Well No. 2. None of Sowards's three accountings began in 1995, and therefore he had not included those acquisition costs in the accountings presented to the trial court. To the extent ConocoPhillips is asserting it is entitled to deduct its acquisition costs from the 1995 EOG transaction, it failed to present the figures detailing such acquisition costs to the trial court in its response opposing the Grandchildren's summary judgment motion or at the hearing; therefore, the argument is waived. *See* TEX. R. APP. P. 33.1(a). To the extent that ConocoPhillips is arguing that it is entitled to deduct the costs incurred by EOG in drilling Well Nos. 2 and 3 from the Grandchildren's share of production, we disagree. Just as ConocoPhillips is not burdened by the revenue earned by EOG from Well No. 3 before 1995, it similarly is not entitled to deduct costs incurred by EOG in drilling Well Nos. 2 and 3 before 1995. In his affidavit, Rodriguez noted that Well Nos. 2 and 3 were drilled by EOG prior to ConocoPhillips's acquisition of the Leases, and therefore EOG, not ConocoPhillips, received the revenues or other benefits from those wells and bore the expenses for those wells prior to 1995. Further, we note that EOG separately settled with the Grandchildren before the conclusion of the case. We conclude the trial court did not err in disallowing these costs in the cotenancy accounting it adopted.

█ Third, ConocoPhillips argues the trial court erred by eliminating the 22.50%

royalty payments paid by ConocoPhillips to other lessors under the Leases, which should have been deducted as costs against the production. In support, ConocoPhillips asserts that in a "net profits" accounting, the industry standard COPAS permit deduction of royalties from the gross proceeds. However, that industry standard deduction is premised on the existence of a valid lease whose terms include the royalty. Rodriguez's affidavit explains why charging the basic royalty interest under the Leases against the Grandchildren's unleased-cotenants' interest is improper—because the Leases do not bind the Grandchildren's mineral interests. Only the non-participating royalties paid by ConocoPhillips to the other lessors properly bind the Grandchildren's share of production. Because the 22.50% royalty calculation encompassed the basic royalties owed under the Leases, it was properly excluded.

Fourth, ConocoPhillips argues the trial court erred in disallowing interest as part of its "monthly weighted average cost of capital" as a deduction in Sowards's accounting. In its brief, ConocoPhillips acknowledges the Texas Supreme Court's 1965 holding in *Cox v. Davison* that interest may not be deducted from revenues in a cotenancy accounting, but argues the opinion is wrong because "[i]nterest on capital is a cost of developing the field." *See Cox*, 397 S.W.2d at 203. As an intermediate appellate court, we are bound to follow the rule in *Cox* until such time as it may be overturned.

Based on the above analysis, we conclude the trial court did not err in making the adjustments to ConocoPhillips's cotenancy accounting.

### Attorneys' Fees Award

As noted, *supra*, after all the substantive claims were disposed of by summary judgment, the trial court held a bench trial on attorneys' fees. The final judgment awards attorneys' fees against ConocoPhillips in the amount of $1,125,000 each to Leon, Jr. and Minerva "for the attorneys' fees incurred by [them] as a result of the work of [their] lawyers in [the trial court], the work of [their] attorneys in original proceedings in the Court of Appeals and the Supreme Court and the work of [their] attorneys in interlocutory appeal in the Court of Appeals." In addition, the trial court entered lengthy and detailed findings of fact and conclusions of law in support of its attorneys' fees award.

On appeal, ConocoPhillips argues the trial court erred in awarding any attorneys' fees to the Grandchildren because they are not recoverable on a trespass to try title claim. As to the amount of attorneys' fees awarded, ConocoPhillips argues (i) the evidence is insufficient to support the amount, (ii) the trial court abused its discretion in applying a 3x multiplier to offset the contingent fee agreement, and (iii) the trial court abused its discretion by disregarding the testimony of ConocoPhillips's expert on attorneys' fees. We begin with the issue of the Grandchildren's right to recover their attorneys' fees.

### *Right to Recover Attorneys' Fees*

With respect to the right to recover attorneys' fees, ConocoPhillips argues that a trespass to try title claim does not support an award of attorneys' fees and "cannot be bootstrapped under the guise of the Declaratory Judgments Act." *See Martin*, 133 S.W.3d at 267. However, the Grandchildren also prevailed on their claim to recover oil and gas production proceeds under Chapter 91 of the Texas Natural Resources Code, for which attorneys' fees are recoverable. *See* TEX. NAT. RES. CODE ANN. § 91.406 (West 2011). We have previously addressed this precise issue in a case in which a trespass to try title claim was brought along with a Natural Resources Code claim to recover the unpaid share of

oïl and gas proceeds. As here, the plaintiffs prevailed on both claims and we held that attorneys' fees were recoverable under Natural Resources Code section 91.406. *See Prize Energy*, 345 S.W.3d at 570-71. Accordingly, we overrule ConocoPhillips's challenge to the Grandchildren's right to recover attorneys' fees.

### *Amount of Attorneys' Fees Awarded*

 As to the amount of attorneys' fees awarded, the trial court entered twenty pages of very detailed findings of fact and conclusions of law in support of its award of attorneys' fees against Conoco-Phillips. The court detailed the entire history of the litigation, explaining that it was a unique case made more complex by ConocoPhillips's tactics and attempted appeals and original mandamus proceedings to the court of appeals as well as the Supreme Court during the litigation. The trial court further stated that it applied the 3x multiplier as an attempt to make the Grandchildren whole given their contingency fee arrangement with their sole trial attorney, Alberto Alarcon, who was pitted against multiple attorneys for ConocoPhillips. The trial court noted that the Grandchildren's trial attorney and appellate attorney kept detailed time records and filed motions efficiently, in contrast to ConocoPhillips's team of eight attorneys who over-filed motions, motions to reconsider, attempted appeals, etc. The trial court further found that the two plaintiffs' attorneys properly segregated their time, to the extent feasible. The trial court expressly stated on page 4 of its findings of fact that, "the Court finds that it was necessary for Plaintiffs' recovery to establish ownership of the minerals in question ... [and] that it is not necessary, if not impossible, to segregate time and labor

invested pursuing the claims under the Texas Natural Resources Code § 91.401 thru [sic] 91.409 from the time and labor invested in pursuing equitable and common law accounting claims and trespass-to-try-title claims." [12]

We conclude that the record contains legally and factually sufficient evidence to support the trial court's monetary award as reasonable and necessary. *See* TEX. NAT. RES. CODE ANN. § 91.406 (authorizing the award of "reasonable" attorneys' fees); *see also Prize Energy*, 345 S.W.3d at 571 (award of attorneys' fees of $900,000 was reasonable in action by mineral interest purchaser to recover unpaid oil and gas proceeds under the statute, where attorneys' fees expert testified that issues were relatively complex and required sophisticated oil and gas attorneys, multiple hearings were held, and plaintiffs had to expend considerable effort defeating numerous defenses and counterclaims). As to the application of the 3x multiplier, the trial court had discretion to apply the multiplier in an attempt to make the Grandchildren whole in view of their contingent fee agreement with their trial attorney during the four-year-plus litigation of the case.

Finally, as to ConocoPhillips's complaint that the trial court disregarded its expert's testimony about attorneys' fees, the trial court was the fact finder in the bench trial and the sole judge of the credibility of the witnesses and weight of the evidence. *Lemus v. Aguilar*, 491 S.W.3d 51, 59 (Tex. App.—San Antonio 2016, no pet.). The court was therefore entitled to take into consideration its knowledge of all the facts and surrounding circumstances of the litigation in evaluating the testimony on what constituted a reasonable amount of attorneys' fees. *Id.* Based on the record before

---

**12.** On appeal, ConocoPhillips does not separately complain about a lack of segregation, only the sufficiency of the evidence to support the monetary award.

us, we conclude the trial court did not abuse its discretion in awarding attorneys' fees of $1,125,000 each to Leon, Jr. and Minerva. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998).

### Pre-Judgment Interest and Other Errors in the Judgment

In connection with the cotenancy accounting amount, the judgment awarded each of the Grandchildren the sum of $951,546 as prejudgment interest from the date of Leon Oscar, Sr.'s death on November 27, 2006 until March 20, 2015, plus a $283.63 per diem from March 20, 2015 until May 11, 2015, the date of the judgment. Section 91.402 of the Natural Resources Code designates the time periods by which payments of oil and gas proceeds must be made, and section 91.403 specifically mandates the application of interest to untimely payments. *See* TEX. NAT. RES. CODE ANN. §§ 91.402(a), 91.403(a). ConocoPhillips argues the trial court erred in assessing interest under the Natural Resources Code because the case involved a legitimate title dispute. *See* TEX. NAT. RES. CODE ANN. § 91.402(b) (permitting payments to be withheld without incurring interest when there is a legitimate title dispute). As to the legitimacy of ConocoPhillips's assertions of a title dispute, the trial court made an express finding that, "the Court finds that there was no legitimate title dispute in this case." In addition, upon review of the chain of title documents, we have concluded there was no ambiguity in Leonor's Will with respect to the Grandchildren's contingent remainder mineral interest and that title to the collective ¼ mineral interest vested in them when their father died in November 2006. We conclude the trial court did not err in applying interest to the unpaid gas proceeds owed to the Grandchildren, as stated in the judgment.

[35] In addition, ConocoPhillips briefly asserts there are other errors in the final judgment that require correction. ConocoPhillips complains that a legal description and map of Las Piedras Ranch are attached as Exhibits A and B to the judgment, asserting they were not attached to the Grandchildren's summary judgment motion on title. ConocoPhillips's complaint is without merit. The judgment refers to multiple public record sources for the description of Las Piedras Ranch, including the two Exhibits A and B which were attached to a Partial Release of Oil and Gas Lease executed by Conoco, Inc., predecessor to ConocoPhillips, and filed in the public records of Zapata County.

ConocoPhillips further complains of language in the judgment stating that, "to the extent the oil and gas leases and the stipulation of interest above mentioned constitute a cloud on the title to said mineral interests of Minerva Clementina Ramirez and Leon Oscar Ramirez, Jr. such cloud is hereby ordered removed." ConocoPhillips also complains that the judgment declares that Minerva and Leon, Jr. are each "fee simple" owners of 1/12 of the minerals underneath Las Piedras Ranch. Neither statement is improper. The statements fall within the scope of the Grandchildren's request for declaratory relief that they each fully own a 1/12 mineral interest in Las Piedras Ranch and that their 1/12 each mineral interest is not burdened by the Leases.

Finally, ConocoPhillips asserts the judgment improperly requires it to prepare a future accounting for the Grandchildren because they did not plead or move for such relief, and because "a court should not decree future contractual performance by requiring a party to perform a continuous series of acts ... over which the court exercises its supervision." *See Cytogenix, Inc. v. Waldroff*, 213 S.W.3d 479, 487 (Tex.

App.—Houston [1st Dist.] 2006, pet. denied). Specifically, the challenged portion of the judgment orders ConocoPhillips[13] to provide Leon, Jr. and Minerva "a cotenancy accounting, and corresponding payments [to them] after November 1, 2012 for the total production [from Las Piedras Ranch]," and further states that such accounting should be made on the "basis of the value of the minerals produced, plus interest provided by law, less cost of production and marketing of the minerals." In making its complaint about the future accounting requirement, ConocoPhillips ignores the prior statement in the judgment that, "[t]he Court finds that the cotenancy accounting provided by ConocoPhillips Company was only up to the end of October 2012 and was not supplemented as agreed by ConocoPhillips Company." Therefore, it is clear that the court was merely ordering the supplemental cotenancy accounting from November 2012 forward that ConocoPhillips had previously agreed to provide but failed to do. ConocoPhillips also argues that the judgment's statement that it "shall not constitute a bar under any theories of res judicata, collateral estoppel or other legal theories" is improper because a court may not dictate the preclusion consequences of its own judgment. ConocoPhillips represents that the trial court was improperly attempting to define the res judicata effect of its own judgement. However, read in context and not in isolation, that language in the judgment only pertains to the supplemental cotenancy accounting, and not to the judgment as a whole as suggested by ConocoPhillips. The actual statement by the trial court was that "the accuracy and correctness of said accounting after November 1, 2012 are not the subject of adjudication in this case and are not adjudicated in this case and this judgment shall not constitute a bar under any theories of res judicata, collateral estoppel or other legal theories to a future adjudication of the accuracy or correctness of the accounting of production from the subject lands."

With respect to ConocoPhillips's last two complaints about the judgment, as to the judgment's award of relief directly to Minerva Ramirez, instead of to the guardian acting on her behalf, the judgment will be reformed to correct that clerical error. Last, ConocoPhillips challenges the judgment's award of all the Grandchildren's costs against it. As to the costs incurred against EOG before settlement, ConocoPhillips does not identify any costs that were incurred by the Grandchildren only with regard to EOG. As to costs incurred on Rosalinda's behalf, they were also incurred on the Grandchildren's behalf. By failing to set forth the specific costs it seeks to avoid, ConocoPhillips has waived this issue.

### Conclusion

Based on the foregoing analysis, we overrule ConocoPhillips's issues on appeal. The judgment will be reformed to correct the clerical error in which it awards relief directly to Minerva Clementina Ramirez, instead of to her guardian Jesus M. Dominguez, as Guardian of the Estate of Minerva Clementina Ramirez, an Incapacitated Person.

APPEAL BY RODOLFO RAMIREZ AND
EL MILAGRO MINERALS, LTD.

Rodolfo Ramirez and El Milagro Minerals, Ltd. (collectively referred to as "Rodolfo") filed a separate notice of appeal, challenging the final judgment on many of

---

13. ConocoPhillips also complains that the requirement for an additional cotenancy accounting is improper because it has now sold the Leases. The judgment provides for that situation, however, because it requires any "successors and assigns" of ConocoPhillips to provide the additional cotenancy accounting to which the Grandchildren are entitled.

the same bases as ConocoPhillips.[14] Rodolfo's position in the lawsuit is aligned with ConocoPhillips. He makes the same argument that Leonor's Will only devised a life estate in her ½ interest in the surface estate of Las Piedras Ranch to Leon Oscar, Sr. and therefore Leonor's ¼ mineral interest passed under the residuary clause of her Will to her children, Rodolfo, Ileana, and Leon Oscar, Sr. in equal shares, i.e., 1/12 mineral interest each. Specifically, on appeal Rodolfo asserts the trial court erred in: (1) denying his motion for summary judgment on the affirmative defenses of limitations, release, ratification and estoppel; (2) denying his motion for partial summary judgment based on will construction/title; and (3) granting the Grandchildren's partial summary judgment motion on trespass to try title and declaring they collectively own the disputed ¼ mineral interest in Las Piedras Ranch and declaring the leases ineffective as to those mineral interests.[15] The arguments in Rodolfo's brief are substantially the same as ConocoPhillips's arguments. Having examined those issues in depth, *supra*, we similarly reject them as to Rodolfo.

The only separate issue raised by Rodolfo on appeal is the trial court's denial of his summary judgment motion on the affirmative defense of release based on a settlement agreement Leon, Jr. entered into with Rodolfo in an October 2007 lawsuit. In that 2007 lawsuit, Leon, Jr., acting in his capacity as co-executor of Leon Oscar, Sr.'s estate as well as individually, sued Rodolfo and his wife Elia seeking to set aside a quitclaim deed allegedly executed by Leon Oscar, Sr. in which he quitclaimed all his interest in "his lands in Zapata County" to Rodolfo. The case settled with one of the settlement terms including rescission of the quitclaim deed by Rodolfo. Rodolfo moved for summary judgment in this case based on an argument that, by executing the 2007 settlement agreement, Leon, Jr. had released all claims against Rodolfo pertaining to Leon Oscar, Sr.'s property interests. Our review of the settlement agreement shows that its scope does not cover the claims brought by Leon, Jr. in this lawsuit. The settlement agreement only releases claims that "grow out of the subject of the Lawsuit," defined as the suit challenging the quitclaim deed. In order to release a claim, the release document must mention the specific claim to be released. *See Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991) (any claims not clearly within the subject matter of the release are not discharged). We therefore conclude the trial court properly denied summary judgment on the release defense raised by Rodolfo.

### CONCLUSION

Based on the foregoing analysis, we overrule the issues raised by ConocoPhillips and Rodolfo Ramirez and El Milagro Minerals, Ltd., and affirm the trial court's judgment in its entirety, except for the reformation necessary to correct the judgment's award of relief directly to Minerva Clementina Ramirez individually, rather than to Jesus M. Dominguez, in his capacity as Guardian of the Estate of Minerva Clementina Ramirez, an Incapacitated Person.

14. The Grandchildren dismissed all their claims against Rodolfo Ramirez and El Milagro Minerals, Ltd., except for their trespass to try title claim.

15. In their cross-appellant's brief, Rodolfo Ramirez and El Milagro refer to the mineral interest granted to the Grandchildren as a "½" undivided interest, rather than a 1/12 undivided mineral interest as stated in the Final Judgment.