

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-17-00046-CV

**XTO ENERGY, INC.** and Mobil Producing Texas and New Mexico, Inc.,
Appellants

v.

**EOG RESOURCES, INC.** and Reilly McNeel Dillon, et al.,
Appellees

From the 81st Judicial District Court, Atascosa County, Texas
Trial Court No. 14-08-0645-CVA
Honorable Russell Wilson, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice
Dissenting Opinion by:  Marialyn Barnard, Justice

Sitting:        Marialyn Barnard, Justice
              Rebeca C. Martinez, Justice
              Irene Rios, Justice

Delivered and Filed:  April 4, 2018

AFFIRMED IN PART; VACATED AND REMANDED IN PART

This case involves a title dispute over the mineral estate underlying a 1,653-acre tract of land located in Atascosa and McMullen Counties, Texas (the "Mineral Estate"). XTO Energy, Inc. and Mobil Producing Texas and New Mexico, Inc. (collectively, "XTO") sued the McNeel

Heirs[1] and their lessee EOG Resources, Inc.[2] seeking a declaration that XTO holds title to the Mineral Estate and seeking recovery of its share of production. The trial court granted summary judgment holding that the McNeel Heirs own the entire Mineral Estate and XTO owns no interest in the Mineral Estate. XTO appealed. We affirm the portion of the trial court's judgment holding the McNeel Heirs own all of the Mineral Estate, and vacate and remand the portion of the judgment pertaining to EOG pursuant to its settlement with XTO.

## BACKGROUND

The following is a chronological rendition of the relevant portion of the chain of title to the Mineral Estate; the rest of the chain of title is not in dispute. On December 15, 1928, Simona B. Wofford, individually and as attorney in fact for her father and brother, along with her husband Henry R. Wofford, executed a deed (the "Wofford Deed") conveying all of the described 1,653 acres of land in Atascosa and McMullen Counties (the "Property") to Thomas Hetherington in exchange for consideration in the amount of $16,530. The Wofford Deed did not exclude the minerals, and it is undisputed that the Property included both the surface and mineral estates. Hetherington paid $3,000 in cash and executed five promissory notes with sequential terms for the remainder of the purchase price (the "Notes"). To secure the debt, the Wofford Deed retained a

---

[1] The McNeel Heirs consist of the following parties: Reilly McNeel Dillon, Individually and as Co-Trustee of the Reilly McNeel Dillon Trust "A" created under the Will of Rowena McNeel Dillon, Deceased and Trustee of the Reilly M. Dillon Revocable Trust Agreement dated December 10, 2012; Rena Dillon Cruz, Individually and as Co-Trustee of the Reilly McNeel Dillon Trust "A" created under the Will of Rowena McNeel Dillon, Deceased; Phillip P. Yee, Individually and as Trustee of the Nicholas Edward Gordon Trust; Laura G. Georgakakos, Individually and as Trustee of the Konstantine P. Georgakakos and Laura G. Georgakakos Revocable Trust of August 2, 1994, as amended, Trust 1; John Tobin Gordon; Jane McNeel Keller; Frost National Bank, as Trustee of the Lydia Helena Gordon Irrevocable Trust; Frost National Bank, as Trustee of the Aaron Tobias Gordon Irrevocable Trust; Peter K. Georgakakos, as Trustee of the Peter K. Georgakakos Irrevocable Trust; Cruz Mineral Investments, LLC; Esperanza Ministries, Inc.; James McNeel Keller, Individually and as Trustee of the Jane Keller Children's Trust; Katie Adams Keller, Individually and as Trustee of the Jane Keller Children's Trust; Stephanie J. Gimble-Dillon, as Trustee of the Stephanie J. Gimble-Dillon GST Spousal Trust; and Joseph M. Laub, as Trustee of the Stephanie J. Gimble-Dillon GST Spousal Trust.

[2] During the pendency of the appeal, EOG settled with XTO.

vendor's lien against the Property (the "Vendor's Lien") until Hetherington fully paid all the Notes, providing that at such time "this deed shall become absolute." On the same date, Hetherington also executed a deed of trust conveying the Property in trust to O.F. Heinen, as trustee, to secure payment of the Notes (the "Deed of Trust"). The description of the Property in the Deed of Trust was identical to the description in the Wofford Deed. Both the Wofford Deed and the Deed of Trust provided that Hetherington's failure to pay any of the Notes would result in acceleration of all the Notes and default, at the holder's election, and upon such default the Vendor's Lien would become subject to foreclosure. The Wofford Deed and Deed of Trust were filed in the public records of both counties where the Property was located.

The Wofford Deed and the Deed of Trust both contained the exact same provision authorizing disposition of a designated mineral interest:

> It is further agreed and stipulated that grantee may make such disposition of seven-eights [sic] (7/8) of the mineral rights as he may deem fit, however, it further provides [sic] that the usual one-eighth (1/8) royalty will be retained against the land for the protection of the holder or holders of the notes, until the entire balance against the land shall have been fully paid, with all interest thereon.

The gist of the current dispute is whether this provision (the "Disposition Clause") authorized Hetherington to convey title to the 7/8ths mineral interest free and clear of the Vendor's Lien and Deed of Trust lien securing Hetherington's debt to Wofford.

Two days after the execution of the Wofford Deed and Deed of Trust, Hetherington signed a deed conveying the following to Magnolia Petroleum Company:

> An undivided seven-eights [sic] (7/8ths)
> All the oil and gas and oil and gas rights and other minerals and mineral rights in and under and that may be produced from the following described lands, situated in the Counties of Atascosa & McMullen and State of Texas [i.e., the Property] . . . .

The Hetherington-Magnolia Deed described the "Property" using the exact same language as in the Wofford Deed and Deed of Trust. The Hetherington-Magnolia Deed further stated that

Magnolia had the right to "enter upon, explore, develop, operate and occupy said lands for the production of oil, gas and other minerals . . . ." It is clear from reading the deed as a whole that Hetherington intended to convey a mineral interest to Magnolia. The parties do not dispute the nature of the interest, i.e., mineral, not surface. They do dispute the type of title or right acquired by Magnolia and the legal effect of the foreclosure sale on Magnolia's interest. XTO is the successor-in-interest to Magnolia and claims it owns clear title to the Mineral Estate.

Approximately one year after execution of the Wofford Deed, Hetherington defaulted on the first Note. As holder of the Notes, Simona Wofford exercised the option to accelerate the Notes and foreclosed on the Property through the trustee.[3] At the April 1, 1930 foreclosure sale, Simona Wofford bought back the Property for $2,000. The deed executed by the substitute trustee (the "Trustee's Deed") recites that the Property was sold to Wofford in fee simple at foreclosure pursuant to the Deed of Trust securing the Notes. The Trustee's Deed describes the Property sold to Wofford using the same description as in the Wofford Deed, to wit: "1,653 acres of land in Atascosa and McMullen Counties, Texas, on the San Miguel Creek about fifty miles S. of San Antonio," and expressly references the metes and bounds contained in the Wofford Deed "for more complete description."

In 2009, Simona Wofford's successors-in-interest, the McNeel Heirs, leased the Mineral Estate to EOG, which subsequently drilled two producing wells and began paying royalties to the McNeel Heirs. In 2014, XTO filed a trespass-to-try title suit against the McNeel Heirs and EOG claiming that it owns the full mineral interest pursuant to the Hetherington-Magnolia Deed. The McNeel Heirs and EOG filed a competing title claim, along with various other counterclaims. The parties filed competing summary judgment motions on their title claims. The trial court granted a

---

[3] A substitute trustee, Lucian L. Morrison, was appointed under the Deed of Trust and conducted the foreclosure.

partial summary judgment on the issue of title to the Mineral Estate in favor of the McNeel Heirs and EOG. After the McNeel Heirs nonsuited their remaining counterclaims, the trial court entered a final judgment on December 9, 2016 decreeing that, "[a]ll right, title, and interest in the Mineral Estate is vested and has been vested in the McNeel Heirs and their predecessors-in-interest since April 1, 1930, when Lucian L. Morrison, substitute trustee, conveyed the Property, including the Mineral Estate, back to Simona Wofford under a substitute trustee's deed . . ." and that XTO "own[s] no interest in the Mineral Estate." XTO appealed, asserting the McNeel Heirs failed to carry their summary judgment burden to establish superior title to the Mineral Estate and that it (XTO) conclusively established its ownership of the Mineral Estate.

### DISCUSSION

Trespass to try title is the method for determining title to real property. TEX. PROP. CODE ANN. § 22.001(a) (West 2014); *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004) (trespass to try title is typical method used to "clear problems in chains of title"); *Longoria v. Lasater*, 292 S.W.3d 156, 165 (Tex. App.—San Antonio 2009, pet. denied). A plaintiff may recover on a trespass to try title claim by proving (1) a regular chain of conveyances from the sovereign, (2) a superior title out of a common source, (3) title by limitations, or (4) prior possession that has not been abandoned. *Rogers v. Ricane Enterps., Inc.*, 884 S.W.2d 763, 768 (Tex. 1994); *Longoria*, 292 S.W.3d at 165. "A plaintiff[']s right to recover depends on the strength of his or her own title, not the weaknesses of the title of his or her adversary." *Ramsey v. Grizzle*, 313 S.W.3d 498, 505 (Tex. App.—Texarkana 2010, no pet.); *Longoria*, 292 S.W.3d at 165. When, as here, the parties agree that their claimed title stems from a common source, i.e., Simona Wofford, "it is incumbent on the plaintiff to discharge the burden of proof resting on him to establish a superior title." *Great N. Energy, Inc. v. Circle Ridge Production, Inc.*, 528 S.W.3d 644, 669 (Tex. App.—Texarkana 2017, pet. denied) (quoting *Davis v. Gale*, 160 Tex. 309, 330 S.W.2d 610, 612 (1960)). A plaintiff

asserting superior title out of a common source may meet its burden by connecting its title through a complete chain of title to the common source and then by showing that its title is superior. *Great N. Energy*, 528 S.W.3d at 670 (citing *Rogers*, 884 S.W.2d at 768); *Longoria*, 292 S.W.3d at 165 (proof of a common source of title may be achieved through certified copies of the deeds in the chain of title leading to the claimant). When a plaintiff fails to establish superior title in a trespass to try title suit, the proper procedure is for the trial court to enter a "take-nothing" judgment, which divests the plaintiff of all its interest in the land in controversy and vests the same in the defendant. *Great N. Energy*, 528 S.W.3d at 670.

### *Summary Judgment Standard of Review*

We review the trial court's grant of a summary judgment *de novo*, regardless of whether the summary judgment motion was a traditional motion or a no-evidence motion. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a traditional motion for summary judgment, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003). In reviewing a summary judgment, we take as true all evidence favorable to the non-movant, indulging every reasonable inference and resolving any doubts in the non-movant's favor. *Knott*, 128 S.W.3d at 215. Where, as here, the parties filed competing motions for summary judgment, and the trial court granted one motion and denied the other, we review both sides' summary judgment evidence and determine all questions presented and, if the trial court erred, render the judgment that the trial court should have rendered. *Valence*, 164 S.W.3d at 661; *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 583 (Tex. 2015).

Here, since there were competing summary judgment motions on title, the ultimate issue in this appeal is who has superior title to the 1,653-acre Mineral Estate. In resolving that question within the context of this appeal, we must review the summary judgment evidence to determine

whether either XTO or the McNeel Heirs conclusively established as a matter of law that they hold superior title to the Mineral Estate, or whether there is a material fact issue concerning title which precludes summary judgment. As noted, the trial court found that the McNeel Heirs proved as a matter of law that they have superior title to the Mineral Estate, and that the evidence conclusively established that XTO owns no interest in the Mineral Estate. Because both sides rely on the same deeds and other documents to establish their claim of title, our summary judgment analysis turns on an interpretation of the documents and their legal effect.

*Analysis*

On appeal, XTO contends it owns the Mineral Estate because the Disposition Clause in the Wofford Deed and Deed of Trust authorized Hetherington to convey title to Magnolia "free and clear" of the Vendor's Lien and Deed of Trust lien, and replaced the liens with the 1/8th royalty as Wofford's security for payment of the Notes. Magnolia therefore acquired full legal title to the Mineral Estate from Hetherington, subject only to the 1/8th royalty. Under XTO's theory, the foreclosure sale had no effect on Magnolia's ownership of the Mineral Estate "free and clear," except to extinguish the 1/8th royalty. XTO asserts that, per the Disposition Clause, the 1/8th royalty was to remain in effect only until the Notes were fully paid, at which point its function as security ended and the royalty expired according to its defined term. Therefore, XTO's position on appeal is that 1) Simona Wofford's purchase of the Property at the foreclosure sale was limited to only the surface estate, 2) XTO succeeded to Magnolia's clear legal title to the Mineral Estate, and 3) the 1/8th royalty was extinguished by the foreclosure.

The McNeel Heirs disagree that the Disposition Clause "carved out" the Mineral Estate from the Vendor's Lien and Deed of Trust lien. The McNeel Heirs interpret the main function of the Disposition Clause as retaining the 1/8th royalty as a third layer of security for Wofford in the event of a mineral interest transfer; the clause also acknowledged Hetherington's ability to convey

whatever rights he held in 7/8ths of the Mineral Estate. Under the McNeel Heirs' theory, the mineral interest that Magnolia acquired from Hetherington was encumbered by, and subject to, the Vendor's Lien and Deed of Trust lien securing Hetherington's purchase-money debt to Wofford. When Hetherington defaulted on the Notes and the substitute trustee foreclosed on the liens, Magnolia's equitable interest in the 7/8ths mineral interest was extinguished. Therefore, when Simona Wofford purchased the Property at the foreclosure sale, she obtained fee simple title to the full Mineral Estate, i.e., the 7/8ths mineral interest and the 1/8th mineral interest not conveyed by Hetherington.[4] She also obtained fee simple title to the surface estate of the Property. As noted, the trial court found the McNeel Heirs proved their superior title to both the mineral estate and the surface estate of the Property, subject only to the EOG lease.

Although the parties present competing interpretations of the Disposition Clause, they agree the clause is not ambiguous. *See Longoria*, 292 S.W.3d at 166 (merely because parties ascribe different interpretations to a provision does not make it ambiguous). The construction of an unambiguous deed is a question of law for the court that we review *de novo*. *Stribling v. Millican DPC Partners, LP*, 458 S.W.3d 17, 20 (Tex. 2015) (per curiam); *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). In construing an unambiguous deed, our primary duty is to determine the parties' intent as expressed by the language within the four corners of the document. *Luckel*, 819 S.W.2d at 461; *Graham v. Prochaska*, 429 S.W.3d 650, 655 (Tex. App.—San Antonio 2013, pet. denied). The deed's terms are given their plain, grammatical, and generally accepted meanings unless the deed itself shows the parties used them in a technical or different sense.

---

[4] According to the McNeel Heirs, the Disposition Clause restricted Hetherington's ability to convey his interest in the Mineral Estate to only the stated 7/8ths interest until the Notes were fully paid. Therefore, the Hetherington-Magnolia Deed only purported to transfer a 7/8ths mineral interest, with Hetherington retaining his rights in the other 1/8th mineral interest. On appeal, XTO asserts that it owns 100% of the Mineral Estate because the Disposition Clause permitted Hetherington to convey the full mineral interest to Magnolia, not just a 7/8ths mineral interest. Based on our disposition of the title issue in favor of the McNeel Heirs, we need not address whether XTO would hold title to only 7/8ths, or all, of the Mineral Estate if it had proved superior title.

*Prochaska*, 429 S.W.3d at 655. If parts of the deed seem to be contradictory or inconsistent, we strive to harmonize all the parts and construe the deed as a whole to give effect to every provision. *Luckel*, 819 S.W.2d at 462 ("[T]the parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement."); *Prochaska*, 429 S.W.3d at 655. Even if the court could discern the parties' actual intent, that is not the controlling factor; rather, "the actual intent of the parties *as expressed in the instrument as a whole*" controls the construction. *Luckel*, 819 S.W.2d at 462 (citing *Sun Oil Co. v. Burns*, 125 Tex. 549, 84 S.W.2d 442, 444 (1935)). The question of who holds title to the Mineral Estate turns on the meaning of the Disposition Clause within the context of the Wofford Deed and Deed of Trust and the legal effect of the liens and foreclosure sale.

### *The "Disposition Clause" and the Wofford Deed and Deed of Trust*

As noted, the identical Disposition Clause is present in both the Wofford Deed and the Deed of Trust. Therefore, we must determine what the parties intended the clause to mean as expressed within both documents, harmonizing the clause within each document as a whole and between the two documents together.

XTO asserts the Disposition Clause granted Hetherington the right to convey the Mineral Estate "free and clear" of the Vendor's Lien and Deed of Trust lien because the retention of the 1/8th royalty replaced the liens as the security for the Notes. The McNeel Heirs, on the other hand, assert the Disposition Clause merely recognized Hetherington's ability to convey the equitable interest he held in the 7/8ths of the Mineral Estate, and provided for retention of the 1/8th royalty as additional security in the event of such a conveyance; it did not replace or otherwise affect the liens.

The Wofford Deed required Hetherington to pay the balance of the purchase price for the Property (after his $3,000 cash payment) through the five Notes, with the first note due and payable

one year after the execution of the deed, the second note due and payable two years after the execution date, and so on, with the last note due and payable five years after the execution date. To secure the payment of these Notes, the Wofford Deed created the Vendor's Lien. After the conveyance clause, the deed stated, "[b]ut it is expressly agreed and stipulated that the Vendor's Lien is retained against the above described property, premises and improvements, until the above described notes and all interest thereon are fully paid according to their face and tenor, effect, and reading, ***when this deed shall become absolute***." (emphasis added). By its plain terms, the deed recognized the conveyance of title to Hetherington was not absolute, and would not become absolute until he paid the purchase-money debt in full.

The deed further stated the Vendor's Lien would "become subject to foreclosure proceedings as the holder may elect" upon Hetherington's failure to pay any of the Notes when due. In addition, the deed stated that the Vendor's Lien was "[f]urther secured by deed of trust of even date hereof, to O.F. Heinen, Trustee." Immediately following that sentence came the Disposition Clause, which stated that, "grantee may make such disposition of seven-eights [sic] (7/8) of the mineral rights as he may deem fit, however, . . . the usual one-eighth (1/8) royalty will be retained against the land for the protection of the holder . . . of the notes, until the entire balance against the land shall have been fully paid, with all interest thereon." The Wofford Deed's description of the Property did not distinguish between the surface and mineral estates, simply referring to "1653 acres of land." "[T]he general principle of [land] conveyances is that absent an express reservation of a mineral interest, it is conveyed along with the surface; an *inclusive* reference to the mineral interest is not required." *ConocoPhillips Co. v. Ramirez*, 534 S.W.3d 490, 502 (Tex. App.—San Antonio 2017, pet. filed) (citing *Sharp v. Fowler*, 151 Tex. 490, 252 S.W.2d 153, 154 (1952)); *see also Prochaska*, 429 S.W.3d at 655 (warranty deed passes all of the estate owned by the grantor, unless there are clear reservations or exceptions). Nothing in the Wofford

Deed explicitly excluded or released the Mineral Estate from the Vendor's Lien or Deed of Trust; therefore, the "Property" included all the surface and all the mineral estate.

The Deed of Trust expressly referred to the Wofford Deed and was executed on the same day. Pursuant to the Deed of Trust, Hetherington conveyed "fee simple title forever" to the "1653 acres of land" (the Property) to the trustee, with the stipulation that "this conveyance is in trust however to secure the payment of the indebtedness evidenced by the [Notes] . . . ." The Deed of Trust provided that if Hetherington fully paid the purchase-money debt, then "this conveyance shall become null and void and of no further force and effect." The Deed of Trust further stated that his failure to pay any of the Notes would, at the holder's election, mature all the Notes "and they shall become at once due and payable, and the vendor's lien therein mentioned shall become subject to foreclosure proceedings as the holder may elect." Following the discussion of the Vendor's Lien and the holder's option of foreclosure for nonpayment, the Deed of Trust included the exact same Disposition Clause as in the Wofford Deed, stating that Wofford retained a 1/8th royalty for protection on the Notes if the 7/8ths mineral interest was conveyed by Hetherington. Like the Wofford Deed, the Deed of Trust did not expressly exclude or release the Mineral Estate from the liens.

In construing these two documents, XTO urges us to look outside their four corners and consider the circumstances surrounding their execution on December 15, 1928, along with three deeds that occurred later in the chain of title leading to the McNeel Heirs which referenced the Hetherington-Magnolia Deed. Specifically, XTO asserts Simona Wofford was aware of Hetherington's plan to sell the 7/8ths mineral interest to Magnolia immediately after acquiring the Property, and knew that Magnolia supplied the $3,000 cash that Hetherington used for the down payment on the Property. XTO argues this purported knowledge by Wofford shows she intended the Disposition Clause to "carve out" the 7/8ths mineral interest from the liens so Hetherington

could convey clear title to Magnolia. XTO also argues that three subsequent deeds state they are made "subject to" the Hetherington-Magnolia Deed, which means the McNeel Heirs took their title "subject to" the Hetherington-Magnolia Deed. XTO contends this extrinsic evidence informs the parties' intent in agreeing to the Disposition Clause.

This court has previously explained that interpretation of a deed occurs on three tiers, with the court first attempting to ascertain the grantor's intent by examining the plain language of the deed, then applying the applicable rules of construction, and then, only if necessary, considering extrinsic evidence to aid in interpretation of the grantor's intent. *See Longoria*, 292 S.W.3d at 165-66. "The court only progresses to the next tier if the grantor's intent is still unclear." *Id.* at 166; *see also ConocoPhillips*, 534 S.W.3d at 501-02 (similarly declining to look to "surrounding circumstances" to construe the grantor's intent with respect to whether a life estate devise in "Ranch Las Piedras" included the grantor's 1/4th mineral interest, or just her surface interest, where the meaning of the name and the scope of the devise was clear from the plain language stating "all of my right, title and interest in and to Ranch Las Piedras"). Extrinsic evidence of surrounding circumstances may not be used to create doubt where the meaning of the language used is not unclear or ambiguous. *ConocoPhillips*, 534 S.W.3d at 502 (citing *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000)). As the parties here agree the Disposition Clause is not ambiguous, and we concur, we decline to consider extrinsic evidence outside the four corners of the two documents in determining its meaning. *See Luckel*, 819 S.W.2d at 462 (it is the "actual intent of the parties *as expressed in the instrument as a whole"* that controls construction of the document, even if the parties' actual intent can be discerned).

As expressed by the plain language of the Wofford Deed, Simona Wofford: (1) created a Vendor's Lien against the Property to secure full payment of the Notes; (2) stated the Vendor's Lien was "further secured" by the Deed of Trust; (3) stated the deed's conveyance would become

"absolute" upon full payment of the Notes; and (4) in the event of Hetherington's disposition of 7/8ths of the mineral rights, retained a 1/8th royalty against the land for the express purpose of securing full payment of the Notes. Reading the deed's statement that the Vendor's Lien was "further secured by" the Deed of Trust along with the Deed of Trust's statement that upon default "the vendor's lien . . . shall become subject to foreclosure," shows that the purpose of the Deed of Trust was to enforce the Vendor's Lien. The cross-referencing between the two documents shows the function of the Vendor's Lien and the Deed of Trust lien was identical—to protect Wofford against Hetherington's default on any of the purchase-money Notes. Likewise, Wofford's retention of the 1/8th royalty in the event of a mineral interest transfer by Hetherington had the same expressly-stated purpose—"for the protection of the holder of the notes until fully paid." As noted, neither document contains any explicit language expressing Simona's intent to exclude or "carve out" the Mineral Estate from the two liens created by those very documents.

Rather than harmonizing all provisions within the Wofford Deed and Deed of Trust, and between the documents, XTO's interpretation of the Disposition Clause as "carving out" the mineral interest from the liens, and substituting the 1/8th royalty as security, gives the Disposition Clause controlling effect over the other provisions; it also creates an inconsistency by negating the effect of the liens as being "against the Property," i.e., the entire mineral estate and surface estate. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (under rules of construction, "[n]o single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument"). On the other hand, construing the 1/8th royalty in the Disposition Clause as an additional type of security retained by Wofford to protect against a mineral interest transfer, rather than as a replacement of the liens on the Mineral Estate, gives effect to and harmonizes all the provisions in the Wofford Deed and Deed of Trust. Such a construction does not negate or minimize any of the three types of security protection Wofford

- 13 -

expressly included in the two documents.  *See id.* (goal is to "harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless").  We therefore conclude that the plain meaning of the language used in the documents expresses Wofford's intent to secure Hetherington's payment of the Notes using all three types of security, to wit: the Vendor's Lien, Deed of Trust, and 1/8th royalty, and that the Disposition Clause does not exclude the Mineral Estate from the liens.  XTO's interpretation of the Disposition Clause as implicitly excluding the Mineral Estate from the scope of the Vendor's Lien and Deed of Trust conflicts with the explicit language and Wofford's stated purpose of creating the Vendor's Lien and Deed of Trust, along with their legal effect as discussed below.

### *Legal Effect of the Vendor's Lien and Deed of Trust and Foreclosure*

A purchase-money vendor's lien is "a charge imposed by contract to secure payment of the purchase price of real property."  *Glenn v. Lucas*, 376 S.W.3d 268, 275 (Tex. App.—Texarkana 2012, no pet.).  Notwithstanding how absolute the terms of a real property conveyance may be, when a vendor's lien is retained, "[t]he vendor, or seller, retains the superior right, and the vendee, or buyer, merely has an equitable right to acquire title by carrying out the agreement."  *Id.* (quoting *Jones v. Bank United of Tex., FSB*, 51 S.W.3d 341, 343 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)); *State v. Forest Lawn Lot Owners Ass'n*, 152 Tex. 41, 254 S.W.2d 87, 91 (1953).  The purchase contract, i.e., the deed, is treated as executory between the vendor and the vendee, and those holding under them, until the purchase money obligation is fully satisfied.  *Glenn*, 376 S.W.3d at 275 (citing *Bunn v. City of Laredo*, 245 S.W. 426, 429 (Tex. Comm'n App. 1922, judgm't adopted)); *see also Lusk v. Mintz*, 625 S.W.2d 774, 775 (Tex. App.—Houston [14th Dist.] 1981, no writ) (citing *Forest Lawn Lot Owners Ass'n*, 254 S.W.2d at 91).  The vendor retains superior legal title to the property, and the vendee obtains a mere equitable right to acquire title by completing the purchase contract; the deed is therefore treated as an executory contract.  *Glenn*,

376 S.W.3d at 275; *Lusk*, 625 S.W.2d at 775; *see also Walton v. First Nat'l Bank of Trenton*, 956 S.W.2d 647, 651-52 (Tex. App.—Texarkana 1997, pet. denied). A vendor holding an express vendor's lien has a choice of remedies upon the vendee's default—she may sue for her money and foreclose the lien, she may rescind the contract and take possession of the property, or she may sue to recover title and possession. *Glenn*, 376 S.W.3d at 275; *Lusk*, 625 S.W.2d at 775-76 (internal citations omitted). Given the vendor's option under the lien in the event of default to rescind the contract of sale and recover the land on the strength of the vendor's superior title, "if the vendee sells all or part of the interest [prior to payment in full], the conveyance is actually a transfer of an equitable interest susceptible to recission [sic]." *Flag-Redfern Oil Co. v. Humble Expl. Co.*, 744 S.W.2d 6, 8 (Tex. 1987).

Here, the language used in the Wofford Deed to create the Vendor's Lien is the same language the court in *Glenn* held to be sufficient to establish a valid vendor's lien. *See Glenn*, 376 S.W.3d at 275; *see also Lusk*, 625 S.W.2d at 775 (similar deed language held to create express vendor's lien). The deeds in *Glenn* and *Lusk* and the Wofford Deed all expressly created a vendor's lien against the real property and specifically stated, "this Deed shall become absolute" when the purchase money notes are fully paid. *See Glenn*, 376 S.W.3d at 275; *see also Lusk*, 625 S.W.2d at 775. Such language reserves superior legal title to the property in the vendor, in this case Wofford, and makes the deed an executory contract until the payment obligation is fulfilled. *Glenn*, 376 S.W.3d at 275; *Lusk*, 625 S.W.2d at 775. Therefore, Wofford, as vendor, retained superior legal title to the Property until the Notes were paid in full by Hetherington, the vendee, which never occurred.

Wofford's retention of the Vendor's Lien was also coupled with the Deed of Trust executed by Hetherington. A deed of trust can be given as additional security for a vendor's lien and is basically a mortgage with a power to sell upon default. *Starcrest Trust v. Berry*, 926 S.W.2d 343,

351 (Tex. App.—Austin 1996, no writ). Its construction is governed by the same rules of interpretation that apply to contracts and deeds. *Sonny Arnold, Inc. v. Sentry Savs. Ass'n*, 633 S.W.2d 811, 815 (Tex. 1982). "When the owner of real estate executes a valid deed of trust, and then conveys an interest in the mortgaged property to a third party, the rights of the mortgagor's vendee are subject to the rights held by the beneficiary of the deed of trust." *Lavigne v. Holder*, 186 S.W.3d 625, 628 (Tex. App.—Fort Worth 2006, no pet.) (quoting *Motel Enters., Inc. v. Nobani*, 784 S.W.2d 545, 547 (Tex. App.—Houston [1st Dist.] 1990, no writ)).

Here, the Property was encumbered by both the Vendor's Lien and the Deed of Trust lien. In *Flag-Redfern*, the Supreme Court explained the difference between a vendee under a vendor's lien and a mortgagor who executes a deed of trust. The court began by reciting the established law that, "[w]hen a mortgagor executes a deed of trust the legal and equitable estates in the property are severed," with the mortgagor retaining legal title and the mortgagee holding only equitable title. *Flag-Redfern*, 744 S.W.2d at 8. Contrasting a deed of trust mortgage with a vendor's lien, the court explained,

> [A] mortgagor, as the owner of the legal estate, can convey legal title of mortgaged property . . . On the other hand, if a vendor's lien encumbers the land, legal title does not pass to the vendee. A vendee owns the equitable interest along with a contract for the purchase of [the] land. Therefore, if the vendee sells all or part of the interest, the conveyance is actually a transfer of an equitable interest susceptible to recission [sic].

*Id.* It follows then that, "[a] deed conveying land but coupled with a lien for the unpaid purchase money equates an executory contract that will ripen into a title in the purchaser when the obligation to pay the purchase money is met." *Id.* at 9 (citing *Whiteside v. Bell*, 347 S.W.2d 568 (Tex. 1961)).

Here, the Wofford Deed created an express vendor's lien against the Property and specifically stated that "this deed shall become absolute" upon full payment of the Notes. As vendee, Hetherington therefore owned only an equitable right to acquire title to the Property by

completing the purchase contract, and Wofford retained superior legal title until the purchase-money debt was paid in full. *Glenn*, 376 S.W.3d at 275; *Lusk*, 625 S.W.2d at 775. In addition, by executing the Deed of Trust to secure the Vendor's Lien, Hetherington gave the trustee power to foreclose and sell the Property if he failed to fully pay the Notes. Hetherington did not acquire either legal or equitable title to the Property, but only an "equitable right to acquire title by carrying out the agreement." *Glenn*, 376 S.W.3d at 275-76 ("the purchaser under a contract for conveyance of property does not acquire equitable title to the property until he pays the purchase price and fully performs the obligations under the contract"). Because Hetherington never paid the Notes, and instead defaulted, he never acquired the "absolute" title promised under the Wofford Deed, and the deed remained only executory. *Id.* at 275. Therefore, Hetherington owned only an equitable right to obtain title to the Property when he purportedly conveyed the 7/8ths mineral interest to Magnolia two days after he executed the Wofford Deed and Deed of Trust. *See id.* at 276-77. As in *Glenn*, because Hetherington "could not convey more than his interest (which was a mere unmatured equitable right to an undivided [7/8ths] interest in the mineral estate, subject to [Wofford's] lien), [Magnolia's] interest was also a mere unmatured equitable right subject to the lien." *Id.* at 277. Magnolia did not acquire any type of title to the 7/8ths mineral interest from Hetherington, only "an equitable interest susceptible to recission [sic]." *Id.* at 275; *Flag-Redfern*, 744 S.W.2d at 8.

Upon Hetherington's default on the Notes one year later, Wofford exercised her remedy of foreclosure under the Vendor's Lien and Deed of Trust and bought back the Property at the foreclosure sale. *See Lusk*, 625 S.W.2d at 776 (vendor's lien "subject[s] the land to the payment of the purchase money by sale under foreclosure") (quoting *Bunn*, 245 S.W. at 429); *Glenn*, 376 S.W.3d at 275-76; *see also Starcrest Trust*, 926 S.W.2d at 351. The foreclosure sale extinguished Magnolia's equitable interest in the 7/8ths of the Mineral Estate that it obtained from Hetherington.

- 17 -

"[A] foreclosure and sale under a valid deed of trust lien has the effect of passing all right, title, and interest that the mortgagor held at the time the deed of trust was executed, free and clear of the rights of any subsequent purchaser." *Nobani*, 784 S.W.2d at 547 (citing *Hampshire v. Greeves*, 104 Tex. 620, 143 S.W. 147, 150 (1912) (holding bank's foreclosure of prior deed of trust extinguished a subsequent grant of an easement)); *see Lavigne*, 186 S.W.3d at 628 (mortgagor's vendee takes subject to the rights held by deed of trust beneficiary). XTO's argument that the foreclosure sale had no effect on Magnolia's "title" to the 7/8ths mineral interest ignores the plain language of the documents, as well as the legal effects of a vendor's lien and deed of trust, and foreclosure sale. We conclude that because Magnolia only obtained an equitable interest in the 7/8ths mineral interest which never matured into title due to Hetherington's default, the foreclosure sale and Trustee's Deed conveying the Property back to Simona Wofford extinguished Magnolia's equitable right to the 7/8ths mineral interest.

## CONCLUSION

Based on the plain language within the four corners of the relevant documents and their legal effect, we conclude the McNeel Heirs conclusively established that they hold superior title to the Property, which includes all of the Mineral Estate and the surface estate. Accordingly, we hold the trial court properly granted summary judgment for the McNeel Heirs on their claim of title to the Mineral Estate, and properly denied summary judgment for XTO on its title claim.

During the pendency of the appeal, XTO and EOG settled and filed an unopposed joint motion requesting this court to vacate the trial court's judgment with respect to the claims between them. We grant the motion, vacate the portion of the trial court's judgment granting EOG's traditional motion for summary judgment and denying XTO's motion for partial summary judgment against EOG, and remand the claims asserted between XTO and EOG to the trial court

for entry of judgment in accordance with the parties' settlement agreement. *See* TEX. R. APP. P. 42.1(a)(2)(B). We affirm the remainder of the trial court's judgment.

Rebeca C. Martinez, Justice